**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| **ARCHIE GIBSON,** ) <br> ) <br>       **Plaintiff,** ) <br> ) <br>       **v.** ) <br> ) <br> **MICHAEL J. ASTRUE,** ) <br> **Commissioner of the Social** ) <br> **Security Administration,** ) <br> ) <br>       **Defendant.** ) <br> _____ ) | **Case No. CV 10-1180 AJW** <br><br> **MEMORANDUM OF DECISION** |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed his applications for benefits on December 13, 2007. [JS 2]. He alleged that he had been disabled since October 1, 2004 due to diabetes mellitus, vision problems, high blood pressure, a back injury, and a right shoulder injury. [JS 2].

In an April 2, 2010 hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of diabetes mellitus and right shoulder impingement. [Administrative Record ("AR") 12]. The ALJ found that plaintiff

1 retained the residual functional capacity ("RFC") to perform medium work, except that he is precluded from
2 working at heights, climbing ladders, reaching above shoulder level with the right upper extremity, and
3 working with heavy or moving machinery. [AR 13]. The ALJ found that plaintiff's RFC did not preclude
4 him from performing his past relevant work as a security guard as actually or generally performed.
5 Alternatively, the ALJ found that plaintiff could perform alternative work available in significant numbers
6 in the national economy, such as the jobs of hand packager and linen room attendant. [AR 16-18].
7 Accordingly, the ALJ concluded that plaintiff was not disabled.

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Nonexamining physician's opinion**

Plaintiff contends that the ALJ erred in rejecting a nonexamining state agency physician's opinion that plaintiff had severe visual limitations.

On a Physical Residual Functional Capacity form dated March 11, 2008, medical consultant Albert Lizarraras, M.D. checked boxes indicating that plaintiff could perform medium work without restrictions other than a visual limitation in "far acuity." [AR 265]. Dr. Lizarraras noted that plaintiff "should avoid jobs requiring good distance vision." [AR 265]. His report also noted that while plaintiff's allegations of "some

eye sight loss" were "partially credible, . . . based on the objective and subjective evidence [plaintiff] appears capable of at least med[ium] work." [AR 268, 270]. Dr. Lizarraras's findings were affirmed by another medical consultant on July 14, 2008. [AR 272-273].

Dr. Lizarraras apparently based his visual limitation on an internal medical examination report conducted at the Commissioner's request by Bryan H. To, M.D. On March 1, 2008, Dr. To reported that plaintiff had visual acuity without glasses of 20/70 in both eyes, 20/50 in the right eye, and 20/200 in the left eye. With a pinhole correction[1], plaintiff had 20/40 vision in the right eye and 20/200 on the left. Dr. To reported that plaintiff said he had last had an eye examination a year earlier and "notes some blurry vision." [AR 261].

Dr. To opined that plaintiff's impairments did not prevent him from performing medium work, and that plaintiff had "[n]o restrictions" in "[h]earing and seeing." [AR 261-262]. Dr. To said that he would restrict plaintiff from "working with heavy and moving machineries." [AR 262].

The ALJ remarked that treating records from May 2007, when plaintiff was incarcerated, showed some vision loss due to plaintiff's diabetes mellitus. [AR 15 (citing AR 210)]. At that time, plaintiff's uncorrected distance vision was 20/20 in both eyes, 20/20 in the right eye, and 20/200 in the left eye. [AR 210]. Presbyopia[2] was noted, but no treatment was recommended. [AR 210].

The ALJ said that he gave "significant, but not controlling weight" to the opinions of Dr. To and Dr.

---

[1]  A pinhole test is

a test performed on a person who has diminished visual acuity to distinguish a refractive error from organic disease. A refractive error may be corrected with glasses, whereas organic disease may signal the development of preventable blindness. Several pinholes, 0.5 to 2 mm in diameter, are punched in a card. The patient selects one and looks through it with one eye at a time, without wearing corrective lenses. If visual acuity is improved, the defect is refractive; if not, it is organic. The pinhole effect results from blocking peripheral light waves, which are most distorted by refractive error.

Mosby's Medical Dictionary, 8th edition (2009), available at *http://medical-dictionary.thefreedictionary.com/pinhole+test* (last visited April 15, 2011).

[2]  Presbyopia is the "physiologic loss of accommodation in the eyes in advancing age, said to begin when the near point has receded beyond 22 cm (9 inches)." Stedman's Medical Dictionary presbyopia (27th ed. 2000).

3

Lizarraras. The ALJ described those opinions as generally consistent with each other and supported by the record as a whole, with some differences between the two opinions in the degree of specific functional limitations. [AR 15].

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)(citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). An examining physician's opinion, in turn, generally is afforded more weight than a non-examining physician's opinion. Orn,495 F.3d at 631; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). The opinion of a non-examining physician normally is entitled to less deference than that of an examining and treating physician precisely because does not have the opportunity to conduct an independent examination and does not have a treatment relationship with the claimant. See Andrews v. Shalala, 53 F.3d 1035, 1040-1041 (9th Cir. 1995). Standing alone, the opinion of a non-examining physician cannot constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. Morgan, 169 F.3d at 602.

The ALJ's omission of visual limitations from plaintiff's RFC is consistent with the opinion of Dr. To, who examined plaintiff's eyes as part of an internal medical examination and also elicited a history from him about his eyesight. The ALJ considered and discussed Dr. Lizarraras's opinion. The ALJ permissibly resolved the conflict between those two by accepting the examining physician's finding that plaintiff had no work-related visual limitations. See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (stating that the ALJ is not bound by state agency physicians' findings but must explain the weight given to their opinions).

Accordingly, the ALJ did not commit legal error, and his finding that plaintiff does not have a significant visual limitation is supported by substantial evidence in the record.

**Past relevant work finding**

Plaintiff contends that the ALJ erred in finding that plaintiff can perform his past relevant work as a security guard because that job requires frequent use of far visual acuity. Because the ALJ permissibly found that plaintiff did not have a visual limitation affecting his ability to work, that contention lacks merit.

Plaintiff also contends that the ALJ erred in finding that the job of security guard is within plaintiff's RFC because that job involves "apprehending and/or expelling miscreants," and therefore it is reasonable

to assume that plaintiff would have to reach above shoulder level "to grab and secure the alleged intruder." [JS 9].

A claimant is "not disabled" if he retains the residual functional capacity to perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (quoting Social Security Ruling ("SSR") 82-62); see also Burch, 400 F.3d at 679; Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) ("The claimant has the burden of proving an inability to return to his former type of work and not just to his former job."). Information from the Dictionary of Occupational Titles ("DOT"), or the testimony of a vocational specialist, may be used to ascertain the demands of an occupation as ordinarily required by employers throughout the national economy. SSR 82-61, 1982 WL 31387, at *2; Villa, 797 F.2d at 798. Regardless of which source of job information is used, the ALJ is required to make "specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." Pinto, 249 F.3d at 845 (citing SSR 82-62).

The ALJ included a preclusion against reaching above shoulder level on the right in his hypothetical question to the vocational expert. [AR 30-31]. The vocational expert testified that with the limitations described by the ALJ, plaintiff could not perform the job of security guard as he actually performed it because of the "very heavy" lifting.[3] However, the vocational expert testified that plaintiff could perform that job as generally performed "per the DOT," referring to DOT occupational code 372.667-034. [See AR 16, 30-32, 205]. The DOT states that frequent reaching is required to perform the job of security guard. The ALJ asked the vocational expert whether her testimony was consistent with the DOT, and she said that it was. [AR 32].

Plaintiff's argument that he cannot perform the DOT job of security guard because his inability to

---

[3] Plaintiff reported that he had worked as a security guard for "different employers" between 1990 and 2004, including work as a motel security guard. He wrote that his security guard jobs involved monitoring parking lots, checking doors, checking rooms, walking designated areas, and driving around checking houses. [AR 156, 168-169, 175, 204]. He also said that he had to "move boxes of towels and sheets to help out the cleaning staff," and that this required him to frequently lift weights of 50 pounds and sometimes lift 100 pounds or more. [AR 156, 169].

5

reach above shoulder level with his right upper extremity would preclude him from apprehending miscreants is speculative, lacks factual support in the record, and contradicts the vocational expert's testimony that a person so limited could perform that job. Accordingly, the ALJ did not err in finding that plaintiff can perform his past relevant work as generally performed.[4]

Plaintiff testified that he had a criminal record that effectively prevented him from being rehired as a security guard. [AR 23-24]. The ALJ asked the vocational expert whether a criminal record would preclude someone from being hired as a security guard, and the vocational expert said that "[i]t would depend on the record and the time frame." [AR 31]. The possibility that plaintiff would not be hired for a security guard position on account of his criminal record is not relevant to the issue of whether plaintiff is disabled within the meaning of the Social Security Act. See Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.") (citing 42 U.S.C. 423(d)(2)(A) (requiring that claimant's disability be determined "regardless of ... whether he would be hired if he applied for work")).

The ALJ's disability determination at step four is supported by substantial evidence and is free of legal error. Therefore, it is unnecessary to consider plaintiff's contentions regarding the ALJ's alternative finding that plaintiff can perform other work existing in significant numbers in the national economy.

///

///

///

---

[4] The ALJ also found that plaintiff could perform his past job as a security guard as actually performed. [AR 16]. That finding is contrary to plaintiff's description of at least some of his past security guard jobs, which involved lifting heavy boxes of sheets and towels to help the cleaning staff (presumably when plaintiff worked as a motel security guard). [See AR 156, 168-169, 175, 204]. Based on those reports, the vocational expert testified that plaintiff could not perform his past relevant security guard jobs because they required "very heavy" lifting. [AR 31].
Even assuming that the ALJ erred in finding that plaintiff could perform his past relevant work as actually performed, the error was harmless because the ALJ made a properly supported finding that plaintiff could perform the job as generally performed. See Pinto, 249 F.3d at 845; see also 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1) (factors relevant to past relevant work determination); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (outlining the sequential evaluation process).

**Conclusion**

The Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

April 18, 2011

_____
ANDREW J. WISTRICH
United States Magistrate Judge